# 73551. REASON v. THE STATE.

(353 SE2d 73)

Birdsong, Chief Judge.

Gloria Mae Reason was indicted for voluntary manslaughter but convicted of involuntary manslaughter. She was sentenced to ten years with eight to serve and two on probation. She brings this appeal urging as error the failure of the trial court to grant a directed verdict of acquittal based upon an insufficiency of evidence to establish the elements of the commission of an unlawful act in a negligent manner resulting in an unintended death.

Viewing the evidence in the manner best calculated to sustain the verdict, as we must (*Ridley v. State*, 236 Ga. 147 (223 SE2d 131)), we find the jury was warranted in concluding the following developments. On the day of the homicide, Ms. Reason, her husband and several other friends, including the deceased, were present in the appellant's home. There had been much consumption of alcoholic beverages during the day and it appears that both the deceased and the appellant were intoxicated. During the afternoon, appellant wanted to listen to the stereo and her husband wanted to watch the television. The deceased intervened in that argument and made an unexplained remark that the husband ought to be told about "the $5." Ms. Reason demanded that the decedent leave the home. According to her statement, the deceased went in and out of the house on several occasions, apparently returning and resuming the argument. She finally got a gun.

One of the investigating officers at the scene after the shooting testified that the living room (the room in which Ms. Reason stated the shooting occurred) showed signs of a struggle. Nevertheless, Ms. Reason in her statement to the investigating officer said that when the decedent came in the living room the last time he said something to the effect that she would not shoot "Joe" (her husband), reached for the gun and when he grabbed it, the gun discharged and the bullet struck him in the stomach resulting in a fatal wound. Forensic evidence indicated that the weapon probably was discharged more than 30 inches from the body of the victim because of the absence of powder grains or stains on the victim's clothing. Additionally, at the scene when first asked by the police as to what had happened, Ms. Reason stated that the decedent had started to leave the house and some unknown person had discharged a gun from without the house striking the victim in the stomach. Investigation indicated there was no hole in the screen door to substantiate this earliest version of the incident.

Our duty as an appellate court in the face of an allegation that the insufficiency of the evidence demanded a grant of a motion for a directed verdict of acquittal, is to ascertain if there is sufficient credible evidence together with all reasonable inferences arising therefrom

to satisfy a rational jury composed of reasonable persons of a defendant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

The evidence offered by the appellant was that she went to the kitchen to wash dishes after all her guests had left. There was water standing in the sink. When she looked under the sink, she saw her husband's .32 caliber pistol (where she kept it when she was alone in the house). She took the pistol to return it to the bedroom (where it normally was kept). As she was passing through the hall from the living room toward the bedroom, the decedent unexpectedly reentered the house and met her in the hall. He must have seen the gun and when he reached for it, the gun accidentally discharged causing his injury and death. Thus, Ms. Reason defended wholly on the theory of accident. Opposed to this was the State's version that following an argument with the decedent and his repeated return into the house after being ordered to leave, Ms. Reason got the gun. There was a sign of a struggle in the living room where she admitted firing the gun. Credible evidence was before the jury that the gun was discharged more than 30 inches from the body of the decedent allowing a reasonable inference that she had to point the pistol in the victim's direction. Pointing a loaded pistol at or near the person of another is an unlawful act amounting to an aggravated assault. See *Saylors v. State*, 251 Ga. 735, 737 (3) (309 SE2d 796).

We will not speculate as to what evidence the jury chose to believe or disbelieve. On appeal, this court is bound to construe the evidence with every inference being in favor of upholding the jury's verdict. *Mills v. State*, 137 Ga. App. 305, 306 (223 SE2d 498). Where the testimony of the State and that of the defendant is in conflict, the jury is the final arbiter. *Sims v. State*, 137 Ga. App. 264 (223 SE2d 468). Only where there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law is it error for a trial court to refuse to direct a verdict of acquittal. *Merino v. State*, 230 Ga. 604 (198 SE2d 311). There being evidence sufficient to satisfy a rational jury of reasonable persons of appellant's guilt beyond a reasonable doubt, a fortiori it was not error for the trial court to deny the motion for a directed verdict of acquittal.

*Judgment affirmed. Banke, P. J., and Sognier, J., concur.*

DECIDED JANUARY 21, 1987.

*Charles C. Grile*, for appellant.
*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell,*

*Assistant District Attorney*, for appellee.