## S07A0469. WAITS v. THE STATE.
### (644 SE2d 127)

CARLEY, Justice.

A jury found Appellant Marcie Waits guilty of involuntary manslaughter while in the commission of a simple battery, which was a lesser included offense in a malice murder count; one count of felony murder; three separate counts which charged the underlying felonies of aggravated assault, aggravated battery, and cruelty to children; and one count of reckless conduct. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for felony murder and to concurrent terms of years on the remaining counts. Appellant filed a motion for new trial, which was granted as to the felony murder and involuntary manslaughter convictions, and denied as to the remaining counts. Appellant appealed to the Court of Appeals, and the State cross-appealed. OCGA § 5-7-1 (a) (7). The Court of Appeals transferred the case to this Court, and the State withdrew its cross-appeal. However, "[b]ecause the [felony] murder count of the indictment remains pending below, jurisdiction of this appeal lies in this Court. [Cits.]" *Langlands v. State*, 280 Ga. 799 (1) (633 SE2d 537) (2006).*

---

* The victim's fatal injuries occurred on October 22, 2002, and the grand jury indicted the appellant on December 5, 2003. The jury found Appellant guilty on January 9, 2006 and, on the same day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on February 3, 2006, amended on May 16, 2006, and ruled upon by the trial court on October 9, 2006. Appellant filed a notice of appeal on November 7, 2006. The case was transferred from the Court of Appeals on December 1, 2006, docketed in this Court on December 4, 2006, and submitted for decision on January 29, 2007.

1. Construed most strongly in support of the verdicts, the evidence shows that Appellant is the aunt by marriage of the 16-month-old victim, Ethan Waits, who had lived with her and her husband and five young children in their trailer since he was five months old. This arrangement caused the loss of Medicaid benefits for Appellant's children, for which she profanely expressed anger towards the victim. She repeatedly fed him tomatoes despite allergic reactions, including his mouth becoming "all broke[n] out." Appellant's babysitter testified that the victim at times had bruises all over his body, which Appellant attributed to relatively minor falls at home. Two days prior to his fatal injuries, the victim had 12 bruises down his spine, one on his head, a black eye, and a split bottom lip.

On the day of the final injuries, October 22, 2002, Appellant was alone with the children, giving the boys a bath while her daughters played outside. The girls heard a "big boom," and Appellant ran from the trailer, screaming for help because the victim was not breathing. The victim was airlifted to the hospital and treated for two days before he died. During that time, Appellant telephoned the babysitter five times within thirty minutes to request that she coax Appellant's five-year-old son to tell police that he took the victim out of the bathtub and then returned him. Appellant gave varying statements as to what happened to the victim, and asked medical personnel whether a fall could have caused the injuries and whether it could be proven that the victim was shaken. A CT scan and medical expert testimony showed that the victim's death resulted from traumatic head injuries, which were caused by an individual of adult strength, and were consistent with violent shaking or "Shaken Baby Syndrome" and at least one impact, but not with a series of short falls. The victim had also suffered a "bucket handle" fracture to his femur which could only be caused by a very strong twisting motion at the extremity. The evidence was sufficient to authorize a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which the jury returned guilty verdicts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that all of the verdicts are mutually exclusive because they constitute jury findings that the same physical actions were both intentional and criminally negligent. Specifically, Appellant argues that the verdicts of guilt as to aggravated assault, aggravated battery, and cruelty to children required a finding of intentional infliction of injury and, therefore, precluded the mens rea necessary for the finding of unintentional death and the element of criminal negligence in reckless conduct.

"Verdicts are mutually exclusive 'where a guilty verdict on one count logically excludes a finding of guilt on the other. (Cits.)' [Cits.]" *Jackson v. State*, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003). The

verdicts are not mutually exclusive with regard to Appellant's "intent to commit a homicide, since the jury acquitted [her] of malice murder and . . . its guilty verdicts are consistent in finding that [she] did not intentionally kill the child. [Cits.]" *Carter v. State*, 269 Ga. 420, 423 (5) (499 SE2d 63) (1998). However, we must determine whether the offenses underlying the homicide verdicts can be reconciled with the other offenses "by looking to either the legal requirements for each underlying offense or to the unique facts adduced at trial. [Cits.]" *Jackson v. State*, supra at 411 (2).

The felony murder verdict obviously did not logically exclude the separate verdicts regarding its own predicate offenses, and Appellant does not contend otherwise. However, Appellant apparently asserts that the involuntary manslaughter verdict was mutually exclusive of the guilty verdicts for aggravated assault, aggravated battery, and cruelty to children. Because the predicate offense for involuntary manslaughter was simple battery, it did not require proof of criminal negligence, and the intent element of simple battery was not at all logically inconsistent with the mens rea required for the greater offense of aggravated assault, aggravated battery, or cruelty to children. *Carter v. State*, supra. Compare *Jackson v. State*, supra at 411-412 (2); *Easley v. State*, 262 Ga. App. 144, 148 (2) (584 SE2d 629) (2003).

The rule against mutually exclusive verdicts applies only where the convictions result from the same act involving the same victim at the same instant. *Mills v. State*, 280 Ga. 232, 234 (2) (626 SE2d 495) (2006); *Jackson v. State*, supra at 412 (2). Where the victim sustains several injuries, convictions for both intentional and negligent crimes are not mutually exclusive. *Jackson v. State*, supra at 411 (2); *Carter v. State*, supra (also involving the distinct issue of merger). In this case, the criminal intent required for aggravated assault, aggravated battery, and cruelty to children does not logically exclude the criminal negligence element of reckless conduct because the victim sustained numerous injuries. *Jackson v. State*, supra; *Carter v. State*, supra. A rational trier of fact could have found that the victim initially suffered non-fatal injuries on October 22, 2002 which resulted from Appellant's frequently negligent care.

Moreover, "the State is not required to prove beyond a reasonable doubt that the crimes occurred on the date alleged in the indictment [where, as here,] the indictment [does not] specifically state[ ] that the date of the offense is material, [cit.] . . ." *Christian v. State*, 277 Ga. 775, 776 (1) (596 SE2d 6) (2004). Similarly, the indictment did not limit reckless conduct to a single method, but rather included criminally negligent conduct which caused severe head injuries, and the jury's verdict as to that crime could have been based on any of the acts alleged in the indictment. *Carrell v. State*, 261 Ga. App. 485, 486 (1)

(583 SE2d 167) (2003). There is extensive evidence of Appellant's criminal negligence in causing allergic reactions to the victim's mouth and in failing to provide supervision, resulting in several falls and injuries to his head. Thus, the evidence shows that the crime of reckless conduct occurred prior to the other offenses and that the conviction for that crime was not based upon the same conduct as the other crimes. See *Carrell v. State*, supra at 486-487 (1). Compare *Reddick v. State*, 264 Ga. App. 487, 494 (4) (591 SE2d 392) (2003). Accordingly, the reckless conduct verdict does not logically exclude any other verdict.

The trial court also did not err in sentencing Appellant for each of the non-homicide counts, rather than merging any of them. As already discussed, the reckless conduct verdict is attributable to different conduct than the other non-homicide verdicts. The rule prohibiting more than one conviction if one crime is included in the other does not apply unless "the same conduct" of the accused establishes the commission of multiple crimes. OCGA § 16-1-7 (a) (1). See also *Drinkard v. Walker*, 281 Ga. 211, 212-213 (636 SE2d 530) (2006). This rule is also inapplicable to the aggravated assault verdict. Unlike the counts of aggravated battery and cruelty to children, the aggravated assault charge is not limited by the indictment to shaking or physical abuse causing severe head or brain injuries. Thus, the different conduct of strongly twisting the victim's leg constitutes proof of aggravated assault as charged in the indictment. Accordingly, separate convictions for both aggravated assault and reckless conduct clearly are appropriate.

We must now determine whether the separate convictions for aggravated battery and cruelty to children were proper. In *Drinkard v. Walker*, supra, we disapproved the "actual evidence" test and adopted the "required evidence" test for determining when one offense is included in another under OCGA § 16-1-6 (1). Thus, a single act may constitute an offense which violates more than one statute, " 'and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' [Cit.]" *Drinkard v. Walker*, supra at 215 (holding that rape, statutory rape, and incest are not included in one another). Cruelty to children, but not aggravated battery, requires proof that the victim was a child under the age of 18 who was caused cruel or excessive physical or mental pain. OCGA § 16-5-70 (b). Aggravated battery, but not cruelty to children, requires proof that the victim was deprived of a member of his body, the brain in this case, or that such member was rendered useless or seriously disfigured. OCGA § 16-5-24 (a); *Miller v. State*, 275 Ga. 730, 731-732 (1) (571 SE2d 788) (2002). Therefore, each crime requires proof of at least one additional element which the

other does not. Furthermore, the two crimes are not so closely related that multiple convictions are prohibited under other provisions of OCGA §§ 16-1-6 and 16-1-7. *Drinkard v. Walker*, supra at 216, fn. 32. Accordingly, even if the "same conduct" establishes the commission of both aggravated battery and cruelty to children, the two crimes do not merge, and the following pre-*Drinkard* cases which hold otherwise must be overruled: *Jones v. State*, 276 Ga. App. 762, 768 (6) (624 SE2d 291) (2005); *Etchinson v. State*, 245 Ga. App. 449, 450 (2) (538 SE2d 87) (2000); *Harmon v. State*, 208 Ga. App. 271, 275-276 (8) (430 SE2d 399) (1993). Of course, if on retrial of the homicide charges the trial court enters judgment on a verdict of guilt as to the felony murder count, the separate conviction for the underlying felony will have to be vacated at that time. See *McClellan v. State*, 274 Ga. 819, 821 (1), fn. 2 (561 SE2d 82) (2002).

3. Appellant urges that the trial court erroneously allowed Christine Copley, an employee of the Department of Family and Children Services, to testify that the victim's condition and behavior were consistent with Shaken Baby Syndrome, based upon her familiarity with that syndrome and details provided by Appellant during an interview. Ms. Copley has extensive experience and training with respect to fatal child abuse and specifically Shaken Baby Syndrome. That background was "sufficient to allow her to give expert testimony regarding her professional evaluation of [the victim's symptoms]. [Cit.] The fact that she did not hold a medical degree goes only to the weight the jury may give her testimony. [Cit.]" *Adams v. State*, 275 Ga. 867, 868 (3) (572 SE2d 545) (2002). See also *Nichols v. State*, 278 Ga. App. 46, 48 (1) (628 SE2d 131) (2006). Thus, "the trial court did not abuse its discretion in allowing [Ms. Copley's] testimony. [Cit.]" *Nichols v. State*, supra. Moreover, that evidence was cumulative of testimony given by several physicians. *Adams v. State*, supra; *Nichols v. State*, supra.

4. Appellant contends that trial counsel rendered ineffective assistance. To prevail on this claim, appellant must show that her attorney's performance was deficient and that, but for such deficiency, there is a reasonable probability that the outcome of her trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In applying this test, we accept the trial court's findings of fact and credibility determinations unless they are clearly erroneous, but we independently apply the proper legal principles to the facts. *Wells v. State*, 281 Ga. 253, 255 (2) (637 SE2d 8) (2006).

Although Appellant acknowledges that Georgia does not recognize the cumulative error rule, she relies on the asserted cumulative prejudicial effect of multiple alleged attorney errors. We recently held

that each individual error by defense counsel should not be considered in a vacuum and that it is the cumulative prejudice of counsel's errors which is constitutionally relevant. *Schofield v. Holsey*, 281 Ga. 809, 812 (II), n. 1 (642 SE2d 56) (2007). However, as this Court cautioned, "[a]lthough the combined effects of trial counsel's errors should be considered together as one issue, it remains the case that '(t)his [s]tate does not recognize the cumulative error rule.' [Cit.]" *Schofield v. Holsey*, supra. Thus, in other contexts, "Georgia does not follow a cumulative error rule of prejudice. [Cit.]" *Laney v. State*, 271 Ga. 194, 198 (11) (515 SE2d 610) (1999). Furthermore, although other courts have recognized the "cumulative prejudice" theory set forth in *Schofield* with respect to claims of ineffective assistance, the "cumulative error" theory "appears to have been universally rejected." John M. Burkoff & Nancy M. Burkoff, *Ineffective Assistance of Counsel*, § 5:19.

> Impact alone, not traceable to error, cannot form the basis for reversal. . . . [W]e therefore . . . should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors. [Cits.] Permitting the effect of "non-errors" to be cumulated in order to reverse a conviction would vest nearly uncontrolled discretion in the appellate courts.

*United States v. Rivera*, 900 F2d 1462, 1471 (I) (10th Cir. 1990) (quoted in Burkoff, supra at § 5:21). In this state, it is always " 'incumbent upon the defendant to show error with regard to each point he raises.' " *Brinson v. State*, 243 Ga. App. 50, 52 (3) (530 SE2d 798) (2000).

In this case, each alleged deficiency of trial counsel either was completely without any factual basis or involved his failure to object to clearly admissible evidence or proper trial procedure. In several instances, counsel's testimony shows that his decisions were also attributable to reasonable trial strategy. Where, as here, "none of the errors alleged by the defendant satisfied the first *Strickland* prong, there were no 'errors' which could be considered in a cumulative-prejudice analysis." Burkoff, supra at § 5:21. Moreover, Appellant does not make any effort beyond cursory speculation to show how she met the prejudice prong of the *Strickland* test. *Welch v. State*, 243 Ga. App. 798, 799-800 (2) (534 SE2d 471) (2000).

The trial court concluded that Appellant's "claims of ineffective assistance fell far below the mark and [she] did not approach establishing [those] claims." "Our review of the record leads us to conclude that the trial court was not clearly erroneous in its determination; accordingly, we affirm the . . . determination that [A]ppellant was afforded effective assistance of counsel at trial." *Turner v. State*, 273

Ga. 340, 343 (2) (b) (541 SE2d 641) (2001). Under the circumstances, " 'it is not necessary to address specifically and individually every instance of alleged ineffective assistance.' [Cits.]" *Cook v. State*, 273 Ga. 828, 830 (3) (546 SE2d 487) (2001).

*Judgments affirmed. All the Justices concur.*

DECIDED APRIL 24, 2007 —
RECONSIDERATION DENIED MAY 14, 2007.

*Smith, Price & Wright, Charles G. Price*, for appellant.
*Leigh E. Patterson, District Attorney, John A. Tully, Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.