**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 21, 2021**

# In the Court of Appeals of Georgia

A20A1829. CAMERON v. THE STATE.

MERCIER, Judge.

Following a jury trial, Milton Cameron was convicted of simple battery (as a lesser included offense of kidnapping with bodily injury), terroristic threats, criminal damage to property, and two counts of misdemeanor battery.[1] He appeals, arguing that the trial court erred in refusing to merge his battery convictions. We affirm.

Viewed favorably to the jury's verdict, the evidence shows the following. See *Wilson v. State*, 354 Ga. App. 64 (840 SE2d 601) (2020). On January 26, 2002, the victim was at her apartment with several individuals, including Cameron, who was her boyfriend at the time. When the victim indicated that she needed to leave for

---

[1] The jury found Cameron not guilty of arson, false imprisonment, and aggravated assault.

work, Cameron began to argue with her, telling her not to go. As the argument escalated, Cameron punched the victim in the mouth, then dragged her by her hair from the living room to her bedroom. Once in the bedroom, Cameron locked the door, continued to physically assault the victim, and placed her in a choke-hold. The victim managed to escape from the room and her apartment, but not before Cameron hit and kicked her multiple times, leaving her with a broken lip and blood on her shirt, and threatened to kill her.

A few minutes after she ran from the apartment, the victim saw Cameron walking down the street. She returned home to find that items in her closet had been set on fire. The police and fire department were called, and the victim went to the hospital for treatment.

Following her release from the hospital, the victim spent two nights in a hotel, then went to a shelter for battered women. Over the next few days, Cameron left voice mail messages for her, threatening to hurt her family if she did not contact him. Fearing for her family's safety, the victim met with Cameron on February 1, 2002, and accompanied him to his sister's apartment. When the victim decided to leave later that night, Cameron told her that he did not want her to go and placed a gun on the bed. The victim agreed to stay.

2

The two remained together in the apartment for several days without further incident. On February 4, 2002, however, Cameron began to look at her "all crazy," slapped her, and punched her in the eye and mouth, causing her to bleed. The victim tried to walk out of the apartment, but Cameron placed an object around her neck, choking her. The victim fell to the floor, and Cameron hit her in the head. She lost consciousness for a period of time, then woke to Cameron carrying her up the stairs of the apartment. Cameron eventually fell asleep, and the victim fled from the home.

The jury found Cameron guilty of simple battery (as a lesser included offense of kidnapping with bodily injury) (Count 1), criminal damage to property (Count 2), terroristic threats (Count 3), misdemeanor battery with respect to the events on January 26, 2002 (Count 4), and misdemeanor battery with respect to the events on February 4, 2002 (Count 7). Cameron appeals the denial of his motion for new trial, arguing that the three battery offenses should have been merged at sentencing.[2]

1. First, Cameron claims that the trial court erred in failing to merge his conviction for simple battery (as a lesser included offense of kidnapping with bodily

_____

[2] Cameron filed a timely motion for new trial following his convictions in October 2002. It appears that the trial court orally denied Cameron's motion in 2004, but the ruling was not reduced to writing until November 14, 2019.

injury) (Count 1) into his misdemeanor battery conviction relating to the January 26, 2002 incident (Count 4). We disagree.

"Whether two offenses should be merged is a question of law, and we apply a 'plain legal error' standard of review." *Wilson*, supra at 72 (3) (citation and punctuation omitted). Under the merger doctrine, "a criminal defendant cannot be subject to the imposition of multiple punishment when the same conduct establishes the commission of more than one crime." Id. (citation and punctuation omitted). The doctrine does not apply, however, when multiple convictions are based on different conduct. See id. And in this case, the record clearly shows that Cameron's convictions on Counts 1 and 4 arose from different conduct.

Count 1 alleged that on January 26, 2002, Cameron committed the offense of kidnapping with bodily injury by "unlawfully and forcibly abduct[ing] and steal[ing] away [the victim], a person, without lawful authority and warrant and hold[ing] said person against her will; said act resulting in bodily injury to said [victim]." Both sides recognized at trial that this charge centered on Cameron's conduct in forcibly dragging the victim by her hair through the apartment to her bedroom, causing pain to her head and loss of hair.

4

During a charge conference held prior to closing arguments, defense counsel requested that the trial court instruct on simple battery as a lesser included offense of kidnapping (Count 1), explaining: "The evidence in the case has been that [Cameron] pulled [the victim's] hair and drug her across the room. . . . I think the jury might be able to find that that is a battery." The trial court questioned: "Don't they have a battery wound up in that whole thing, too, as a separate charge?" Defense counsel responded: "[The battery charge] does not allege the hair. So I would respectfully request a lesser included charge of battery on the hair pulling and dragging incident." The State did not object, and the trial court granted Cameron's request for the instruction.

Defense counsel subsequently highlighted the lesser included offense during his closing argument, asserting that "[d]ragging somebody by the hair is not kidnapping." He further argued to the jury:

> You are going to get a charge on a lesser included offense when it comes to kidnapping. The judge is going to instruct you all on a lesser included offense of battery, and I submit to you all that when [Cameron] pulled [the victim's] hair and dragged her across the floor, that that's a battery. That's not kidnapping.

Ultimately, the jury agreed with Cameron that the hair-dragging conduct involved in Count 1 constituted simple battery, not kidnapping. See OCGA § 16-5-23 (a) ("simple battery" occurs when a person "[i]ntentionally makes physical contact of an insulting or provoking nature with the person of another . . . or . . . [i]ntentionally causes physical harm to another."). In contrast, Count 4 alleged that Cameron committed a different crime – misdemeanor battery – by "intentionally caus[ing] visible bodily harm to [the victim] by punching her in the face with his fist, choking her, and kicking her in the stomach." See OCGA § 16-5-23.1 (a) ("A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another."). Count 4 focused on Cameron's acts of hitting, kicking, and choking the victim, rather than the hair-dragging conduct.

As defense counsel argued to the trial court when requesting a charge on the lesser included offense of simple battery, the conduct underlying the jury's verdict on Counts 1 and 4 was not the same. Accordingly, Cameron's convictions on these two counts did not merge. See *Waits v. State*, 282 Ga. 1, 4 (2) (644 SE2d 127) (2007) ("The rule prohibiting more than one conviction if one crime is included in the other does not apply unless 'the same conduct' of the accused establishes the commission of multiple crimes."); *Wilson*, supra at 73 (3) (trial court did not err in failing to

6

merge convictions for crimes that "were separate and sequential and not based on the same exact conduct"); *Johnson v. State*, 305 Ga. App. 838, 840-841 (2) (700 SE2d 726) (2010) (no merger where convictions not based on the same conduct).

2. Cameron also argues that the trial court should have merged Count 4 (alleging a battery committed on January 26, 2002) and Count 7 (alleging a battery committed on February 4, 2002) because, in his view, the two charges are almost "indistinguishable." It is true that "if the counts in the indictment are identical except for the dates alleged, and the dates were not made essential averments, only one conviction can stand." *Thomas v. State*, 352 Ga. App. 640, 642-643 (1) (a) (835 SE2d 640) (2019) (citation and punctuation omitted). The two counts at issue, however, not only alleged different dates, but different conduct as well. As noted in Division 1, Count 4 alleged that on January 26, 2002, Cameron intentionally caused "visible bodily harm to [the victim] by punching her in the face with his fist, choking her, and kicking her in the stomach[.]" Count 7, on the other hand, charged that on February 4, 2002, Cameron "did intentionally cause substantial bodily harm to [the victim] by punching and choking her[.]"

Pursuant to OCGA § 16-5-23.1 (a), a battery results when a person intentionally causes substantial physical harm *or* visible bodily harm to another

7

person. Count 4 alleged one way of committing the offense (by intentionally causing visible bodily harm), while Count 7 alleged a different method (by intentionally causing substantial bodily harm). Given the differences in the allegations, as well as the clear testimony at trial that Cameron physically assaulted the victim on two separate occasions in two different locations, the trial court did not err in failing to merge Counts 4 and 7. See *Torres v. State*, 353 Ga. App. 470, 484 (6) (838 SE2d 137) (2020) ("Where an averment in one count of an accusation or indictment distinguishes it from all other counts, either by alleging a different set of facts or a different date which is made an essential averment of the transaction, the State may on conviction punish the defendant for the various crimes." (citations, punctuation, and emphasis omitted)); see also *Griffin v. State*, 294 Ga. 325, 328 (751 SE2d 773) (2013) ("The state must prove all material allegations in an indictment which describe the offense or the particular manner in which the offense was committed." (citation and punctuation omitted)).

*Judgment affirmed. Miller, P. J., and Senior Appellate Judge Hebert E. Phipps, concur.*